**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 04-1625**

———————

BRENDA J. BALDWIN,

                                        Plaintiff - Appellant,

        versus

GORDON ENGLAND, Secretary of the Navy, United
States Department of the Navy,

                                        Defendant - Appellee.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-02-2066-AW)

———————

Argued:  May 25, 2005              Decided:  June 22, 2005

———————

Before LUTTIG and SHEDD, Circuit Judges, and Eugene E. SILER, Jr.,
Senior Circuit Judge of the United States Court of Appeals for the
Sixth Circuit, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Joseph Davis Gebhardt, GEBHARDT & ASSOCIATES, L.L.P.,
Washington, D.C., for Appellant.  John Walter Sippel, Jr.,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Charles W.
Day, Jr., GEBHARDT & ASSOCIATES, L.L.P., Washington, D.C., for
Appellant.  Thomas M. DiBiagio, United States Attorney, Baltimore,
Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff-appellant Brenda J. Baldwin filed a complaint in federal district court against defendant-appellee Gordon England, Secretary of the Navy, alleging that she was denied a promotion based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court granted summary judgment in favor of the defendant. For the reasons that follow, we affirm.

I.

Baldwin has been employed by the Navy for twenty-three years. J.A. 514. From 1996 to 2001, she worked at the GS-11 level as a Logistics Management Specialist in the Cartridge Actuated Device/Propellant Actuated Device (CAD/PAD) Department, within the CAD Acquisition and Logistics Division, Logistics Branch, at the Naval Surface Warfare Center in Indian Head, Maryland. Id. Her position was at full performance level, which means there was no room within the position for advancement. Id. at 515.

In her position, Baldwin had two possible means of acquiring a promotion: first, she could seek a promotion competitively, by applying for an open position at a higher grade level; and second, she could seek to be promoted noncompetitively, through an "accretion of duties" promotion. See 5 C.F.R. § 335.103. An accretion of duties promotion occurs when an employee has assumed

sufficient additional duties and responsibilities to justify dissolving her current position and creating a new position for her at a higher grade that includes both the original responsibilities of the old job and the additional duties the employee has undertaken. J.A. 329, 382-83. Baldwin sought such a promotion in March 2000. J.A. 69.

In June 2000, Baldwin learned that two of her male GS-11 co-workers, Mike Rutledge and Greg Knapp, had been given accretion of duties promotions. J.A. 516, 72. Both Rutledge and Knapp worked in the CAD/PAD Department as Ordnance Equipment Specialists. J.A. 397, 403. Rutledge had the same supervisors as Baldwin; one of those supervisors helped him obtain a promotion by rewriting his position description to reflect his new duties. J.A. 516.

Each time Baldwin requested an accretion of duties promotion to a GS-12 promotion during 2000, she was told she could not be promoted; she alleges she was initially told that there was a pending reduction-in-force (RIF) that had resulted in a hold on all personnel actions. J.A. 71. In litigation, her supervisor testified that he told her that the RIF did not affect her because she was at her full performance level and there were no open GS-12 positions for which she could apply. J.A. 289, 296-97. One of Baldwin's higher level supervisors also told her that she was not performing her duties, J.A. 75, and her supervisors later said that she could not be promoted because she was performing only at a GS-

-4-

11 level and there was no GS-12 work available. J.A. 323, 77. Baldwin has since transferred to a GS-12 position elsewhere in the Navy. J.A. 516.

Because the Navy denied her a promotion, Baldwin filed an EEO administrative complaint. J.A. 359. Before a decision was issued on her EEO complaint, she filed suit in the district court alleging gender discrimination in violation of Title VII. Id. The district court granted summary judgment in favor of the Navy on the grounds that Baldwin had failed to establish a prima facie case of discrimination and that, even if she had established a prime facie case of discrimination, Baldwin did not create a genuine issue of fact as to whether the Navy's asserted non-discriminatory reasons were pretextual. J.A. 521-23.

II.

We review the district court's grant of summary judgment de novo, viewing facts in the light most favorable to the nonmoving party. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 958 (4th Cir. 1996). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

A plaintiff-employee seeking to prove that she was denied a promotion because of her sex must either provide "direct evidence

of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." Evans, 80 F.3d at 959. Baldwin seeks to prove discrimination based on circumstantial evidence using the three-step framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, the plaintiff must first prove a prima facie case of discrimination. Evans, 80 F.3d at 959. A prima facie case requires that the plaintiff demonstrate that "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Id. at 959-60. If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant-employer to present a legitimate, non-discriminatory reason for the denial of a promotion. Id. at 959. If the employer does so, the burden shifts back to the employee to demonstrate that the purported non-discriminatory reason was mere pretext for discrimination. Id.

The Navy alleges that Baldwin has failed to prove the latter three prongs of her prima facie burden. The district court rested its grant of summary judgment in large part on its conclusion that Baldwin had failed to apply for any position. J.A. 521. We need not review this conclusion, however. We conclude that even if

-6-

Baldwin did present a prima facie case, the district court correctly concluded that she failed to demonstrate that her employer's non-discriminatory explanation for denying her a promotion was pretext.

Baldwin relies exclusively on the Navy's promotion of Rutledge and Knapp in 2000 as the circumstance giving rise to an inference of discrimination. Appellant's Br. at 28-30. According to Baldwin, both men were similarly situated to her. J.A. 441-42. Rutledge was a GS-11, was supervised by the same three supervisors as Baldwin, and was in the same branch of the CAD/PAD Department as Baldwin. J.A. 73, 403. Knapp was likewise a GS-11, had the same third-line supervisor as Baldwin, and was in the CAD/PAD Department, although in a different branch. J.A. 73, 397. Baldwin alleges that the Navy's differential treatment of her and her two male co-workers supports an inference of sex discrimination.

The Navy rebuts Baldwin's allegation by explaining the men's promotions in light of the RIF that occurred in 2000. While Rutledge was promoted after the RIF occurred, his paperwork for promotion was submitted before the announcement of the RIF. J.A. 72-73, 307-08, 414. Knapp's promotion was done as part of a position description review that was mandated by contract, through which he identified substantial additional responsibilities he had acquired. J.A. 358, 414. Thus, the promotions of Rutledge and Knapp, unlike Baldwin's requested promotion, were not barred by the

RIF. The Navy also notes that Rutledge and Knapp each held a different position than Baldwin did and performed different duties. J.A. 322 ("[Rutledge and Knapp's] equipment specialist position has different duties, supervisory controls and complexity than the logistics management specialist position that Ms. Baldwin is in.").

Baldwin bears the burden of presenting evidence sufficient to permit a judgment that the Navy's explanations are a pretext for discrimination. But Baldwin does not appear to dispute that a RIF occurred, or to attempt to discredit the Navy's explanations of why Rutledge and Knapp were not affected by the RIF, as Baldwin was. Instead, she only alleges that she, Rutledge, and Knapp generally performed similar jobs, and that the fact that her supervisors provided various explanations to her of why she could not be promoted demonstrates that those explanations are pretext. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) ("Indeed, the fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext.").

Neither of these allegations creates a genuine issue of material fact concerning pretext. It is undisputed that Rutledge and Knapp had different job titles than Baldwin, and Baldwin offers no evidence other than her unsupported allegation to permit a conclusion that their duties were nonetheless similar. See Evans, 80 F.3d at 960 (holding that a plaintiff-employee's

"unsubstantiated allegations and bald assertions" are insufficient to rebut the employer's non-discriminatory justification for an employment decision). Absent proof that their duties were the same, the mere fact that their work was GS-12 level does not disprove the Navy's contentions that Baldwin's work was not GS-12 level and that no GS-12 level work was available for her to perform. Nor do the varying explanations offered by her supervisors to explain their refusal to promote Baldwin suffice, under these circumstances, to demonstrate pretext. The explanations that Baldwin alleges she received from her superiors do not contradict each other, but rather reflect various consistent reasons that she could not be promoted. See J.A. 71 (Baldwin alleges that she was told that the RIF barred all personnel actions); J.A. 289 (Baldwin's supervisor explains that while personnel actions were on hold, that hold had no effect on Baldwin because she was ineligible for a promotion in any event). In contrast, the store manager in Sears Roebuck & Co., on which Baldwin relies, admitted that she had lied to the member of the company investigating the failure to hire the plaintiff-employee and that she had purposely withheld the true explanation for her failure to hire from the EEOC. Sears Roebuck & Co., 243 F.3d at 850. Unlike the employer's dishonest representations in Sears Roebuck, the Navy's proffer of consistent, though varying, reasons that Baldwin could not be promoted fails to support an allegation

-9-

that any of those reasons are false, much less that all of them are a pretext for discrimination.

Because the Navy has offered a legitimate reason for its failure to promote Baldwin in the face of promotions of male co-workers, and Baldwin has failed to offer sufficient evidence for a reasonable factfinder to conclude that the Navy's explanation is pretext, the district court correctly granted summary judgment in favor of the Navy.

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED